GEORGE G. AND HELEN C. ALEXANDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alexander v. Commissioner
Docket No. 24194-92
United States Tax Court
T.C. Memo 1995-334; 1995 Tax Ct. Memo LEXIS 335; 70 T.C.M. (CCH) 159; July 25, 1995, Filed *335 Decision will be entered under Rule 155. George G. Alexander, pro se. William G. Bissell, for respondent. CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in, and additions to, petitioners' Federal income taxes as follows: Additions to tax
Sec. Sec.
Sec.
Sec. Year
Deficiency
6621(c)
6653(a)(1)
6661
6662(a)
1988
$ 110,057  *
$ 5,503 $ 27,514
-- 1989
24,657 --
--
--
$ 4,931
* Amount to be determined.
After concessions by the parties, the sole issue for decision is whether petitioners are entitled to a bad debt deduction for the taxable year 1988 in the amount of $ 189,500. We hold that they are not. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. FINDINGS OF FACT Some of the facts are stipulated and are so found. We incorporate by reference the stipulation of facts, first supplemental stipulation of facts, and attached exhibits. Petitioners are George G. Alexander (petitioner) and Helen C. Alexander, and they resided in Houston, *336 Texas, at the time they filed their petition. Petitioners were on the cash basis of accounting for tax purposes. On March 16, 1988, Medical Interiors, Inc. (Medical Interiors) borrowed $ 200,000 from Texas Commerce Bank (the Bank), and petitioner guaranteed the note from Medical Interiors (Medical Interiors note) to the Bank. Petitioner was not a shareholder of Medical Interiors. In October 1988, Medical Interiors filed for bankruptcy protection, and the Bank demanded payment of the Medical Interiors note from petitioner, as guarantor. The Medical Interiors note was a bona fide debt that became worthless in 1988. On October 19, 1988, petitioner obtained a loan of $ 191,000 from the Bank (the Alexander loan), evidenced by a note (the Alexander note) and secured by petitioner's stock in HEI Corporation (HEI). Petitioner authorized and directed the Bank to apply the Alexander loan proceeds to satisfy petitioner's obligation as guarantor of the Medical Interiors note, which had an outstanding balance of $ 191,000. OPINION Petitioners argue that they are entitled to a $ 191,000 bad debt deduction under section 166 in 1988 when they "satisfied" their guarantee of the Medical Interiors *337 note. Respondent argues that petitioners substituted the Alexander note for their obligation as guarantors of the Medical Interiors note, and as such they are not entitled to a bad debt deduction until payments are made on the Alexander note. We agree with respondent. A bad debt deduction is not available to a cash basis taxpayer unless the taxpayer makes an outlay of cash or property having a cash value. . Where a guarantor substitutes a personal note for that of the primary obligor in satisfaction of the guarantor's guarantee, this substitution does not constitute such an outlay until the note is actually paid. ; , affd. without published opinion ; ; . Payment of an otherwise deductible item with borrowed funds may be recognized for tax purposes *338 if the taxpayer exercises unrestricted control over the loan proceeds. ; ; Even where a taxpayer exercises unrestricted control over the loan proceeds, the intended use of those proceeds may determine whether the payment is deductible. . Petitioners bear the burden of proving that respondent's determination is not correct. Rule 142(a); . Petitioners argue that they controlled the Alexander loan proceeds and focus on the fact that they authorized the Bank to apply the proceeds to satisfy the Medical Interiors note. We look beyond the loan documents to determine whether petitioners had unrestricted control over the loan proceeds. Where the taxpayer commingled the loan proceeds with the taxpayer's separate funds, or where the funds are made available for withdrawal by the taxpayer, that is some evidence that the *339 lender relinquished control of the loan proceeds to the taxpayer. , affd. ; . Petitioners provided no such evidence. We conclude that petitioners did not exercise unrestricted control over the Alexander loan proceeds. Petitioners' ownership of other assets from which payment could be made might be relevant in some circumstances. . Petitioners argue that they could have sold their HEI stock and used the proceeds to satisfy the Medical Interiors note, but they were concerned that doing so would have lowered the value of the HEI stock. Thus, instead, they used their HEI stock as collateral for the Alexander loan. Petitioners argue that this alternative purpose, preserving the value of the HEI stock, distinguishes this case from , where we found that the primary purpose of the second loan was to finance the payment of the first loan. The amount *340 of the Alexander loan equaled the outstanding balance due on the Medical Interiors note. On October 18, 1988, petitioners were liable to the Bank for $ 191,000 pursuant to the Medical Interiors note guarantee, and on October 19, 1988, petitioners were liable to the Bank for $ 191,000 pursuant to the Alexander note. Petitioners discussed the situation with the Bank, submitted a new loan approval form, and authorized the Bank to transfer internally the Alexander loan proceeds to extinguish the Medical Interiors note guarantee. In substance, the obligation between petitioners and the Bank remained intact but merely in another form. Thus, we conclude that petitioners' primary purpose was to use the Alexander loan proceeds to extinguish the Medical Interiors note. ; To reflect the foregoing and the concessions by the parties, Decision will be entered under Rule 155.